IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| ANGELIA M. POWELL, | ) | CASE NO. 5:18-CV-00776-WHB |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OPINION &** |
| Defendant. | ) | **ORDER** |
| | ) | |

## Introduction

Angelia Powell sought disability insurance benefits based on impairments caused by bulging discs and cord impingement in the thoracic spine. The ALJ denied her application, finding her capable of performing her past relevant work as a garment handler and assembler. Alternatively, she found Powell capable of performing other work that exists in significant numbers in the national economy. This decision has the support of substantial evidence, and, therefore, I affirm.

## Issues

The briefs and oral argument brought into focus three issues:

- The ALJ assigned some weight to the opinion of Dr. Brandon Blood, a treating chiropractor, and little weight to the opinion of Carla Rose, a physician's assistant, which a Dr. Arsal Ahmad signed. Does substantial evidence support the weight assigned to these opinions?

- Powell challenges the ALJ's finding of partial credibility to her statements of limiting effects of impairments caused by bulging discs and cord impingement

in her thoracic spine. Does substantial evidence support the credibility finding?

- Based on the testimony of the vocational expert ("VE"), the ALJ found Powell capable of performing her past relevant work as a garment handler and assembler. Does substantial evidence support this finding?

## Analysis

### A. Treating sources

Powell's first issue challenges the ALJ's residual functional capacity ("RFC") finding for failing to incorporate additional limitations based on the opinions of Dr. Blood, a treating chiropractor, and Carla Rose, a treating physician's assistant.[1]

The regulations divide medical sources into "acceptable medical sources" and "other medical sources."[2] "Acceptable medical sources" include licensed physicians or osteopaths and licensed or certified psychologists.[3] "Other medical sources" include nurse practitioners and physicians' assistants.[4] This distinction has several implications in the evaluation of the opinions expressed by these sources.

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for

---

[1] Dr. Arsal Ahmad co-signed Rose's opinion.
[2] SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY RULING 06-03P, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS; CONSIDERING DECISIONS ON DISABILITY BY OTHER GOVERNMENTAL AND NONGOVERNMENTAL AGENCIES, 2006 WL 2329939, at *1 (Aug. 9, 2006) ("SSR 06-03p").
[3] 20 C.F.R. § 404.1513(a). While changes have been made to the regulations regarding medical sources for claims filed on or after March 27, 2017, the previous version of the regulations applies here. *See* SOCIAL SECURITY ADMINISTRATION, REVISIONS TO RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 2017 WL 168819 (Jan. 18, 2017).
[4] 20 C.F.R. § at § 404.1513(d).

three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d).

Making a distinction between "acceptable medical sources" and medical sources who are not "acceptable medical sources" facilitates the application of our rules on establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source.[5]

Although generally opinions from an "acceptable medical source" will receive greater weight than the opinion of a medical source, the opinion of a medical source may outweigh that of an acceptable source based on the particular facts of the case, applying the factors for weighing opinions in 20 C.F.R. § 404.1527 (c).[6] When the ALJ considers the opinion of a medical source other than an "acceptable" one, she must determine the weight given to that opinion and explain the reasons for the weight assigned in the decision.[7]

The ALJ did not reference Blood and Rose as "non-acceptable sources." Nevertheless, her articulation demonstrates careful consideration to both. The RFC adopted incorporates the physical limitations opined by Blood. These limitations included a general limitation on reaching overhead.[8] Blood did not offer a degree of this limitation.

---

[5] SSR 06-03p at *2.
[6] *Id.* at **5-6.
[7] *Id.* at *6.
[8] ECF No. 10, Transcript ("Tr.") at 560.

3

The ALJ limited reaching overhead to "frequent."[9] Because of the generality of Blood's reaching limitations, the ALJ's finding is not inconsistent. She did not adopt the limitation to alternating positions at will or absences three days a month. But she gave good reasons for rejecting those limitations as not consistent with Powell's daily activities and the medical records. No other source opined these limitations. In particular, the State agency reviewing physicians did not incorporate them.[10] And on reconsideration, the state agency reviewing physician had the benefit of Blood's opinion.[11]

As noted by the ALJ, Rose's opinion by its terms is limited to eight months. Even if considered the opinion of an acceptable source because of Dr. Ahmad's co-signature, the limitation must continue for twelve months to support its inclusion into the RFC. The weight assigned to this opinion, and the decision not to incorporate greater limitations into the RFC based upon it, have the support of substantial evidence.

**B.    Credibility**

As the Social Security Administration has recognized in a policy interpretation ruling on evaluating symptoms in disability claims,[12] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms will be considered with other relevant evidence in deciding disability:

---

[9] Tr. at 15.
[10] Tr. at 165-67, 181-83.
[11] *Id.* at 175.
[12] SOCIAL SECURITY ADMINISTRATION, SOCIAL SECURITY RULING ("SSR") 16-3P, EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS, 2017 WL 5180304 (Oct. 25, 2017).

> If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms. . . . We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and other evidence.[13]

The regulations make the same point.

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's RFC and the work-related limitations dictated thereby.[14]

As a practical matter, in the evaluation of subjective symptoms, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[15] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his or her claim.

The regulations set forth factors that the ALJ should consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain;

---

[13] *Id.* at *6.
[14] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 988-89 (N.D. Ohio 2003).
[15] 20 C.F.R. § 404.1529(c)(3).

precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[16]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents evidence of these factors consistent with other evidence in the record, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence. Importantly, evaluation of subjective symptoms is not an assessment of the claimant's character or truthfulness.[17]

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. A court may not disturb the ALJ's "analysis and the conclusions drawn from it – formerly termed a credibility determination –" absent compelling reason.[18]

Powell anchors her credibility argument on a 2016 MRI. This is critical because it post-dates the opinion of Dr. Blood, which, as explained above, has substantial consistency with the RFC adopted by the ALJ. But Powell had three thoracic MRIs between 2014 and 2016. From the first MRI in March of 2014, through the second in November 2014, and the third in April of 2016, the findings remained unchanged – disc bulging and cord

---

[16] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).
[17] SSR 16-3p at *11.
[18] *Robinson v. Comm'r of Soc. Sec.*, No. 17-cv-12202, 2018 WL 2437560 (E.D. Mich. May 8, 2018) (citing *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)), *report and recommendation adopted by Robinson v Comm'r of Soc. Sec.*, No. 17-cv-12202, 2018 WL 2431689 (E.D. Mich. May 30, 2018).

compression. These findings do not support the claim that Powell's condition worsened after Dr. Blood's opinion in 2015.

The ALJ acknowledged all three MRIs and their findings.[19] She reviewed the objective medical evidence and concluded that it did not support an RFC that would render Powell disabled.[20] As required by the regulations and rulings, the ALJ then looked to other evidence of the severity of the underlying impairment not susceptible to proof by objective medical evidence. Specifically, she evaluated Powell's course of treatment including medications, injections, physical therapy, chiropractic treatment, aquatic therapy, and home exercise.[21] Also, the ALJ analyzed Powell's physical activities.[22] The Court is satisfied that the ALJ considered the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding.[23] There exists, therefore, no compelling reason for the Court to disturb that finding.[24]

**C.     The VE's testimony**

In response to a hypothetical question that incorporated the limitations in the eventual RFC finding, the VE testified that Powell can perform her past relevant work in the combination job of garment handler and assembler and each of the jobs within the composite job – handler or assembler.[25] The VE also testified that Powell, with the same

---

[19] *Id.* at 16.
[20] *Id.* at 16-17.
[21] *Id.* at 16.
[22] *Id.* at 17.
[23] *Buxton*, 246 F.3d at 772.
[24] *Smith*, 307 F.3d at 379.
[25] Tr. at 150.

RFC, could perform other jobs that exist in substantial numbers in the national economy.[26] Based on this testimony, the ALJ found Powell capable of performing her past relevant work and, alternatively, could perform other jobs that exist in significant numbers in the national economy.[27]

Powell argues that the VE's testimony does not constitute substantial evidence in support of the ability to perform past relevant work because the VE testified the garment handler and assembler job does not exist in the DOT.[28] But the VE testified that Powell could perform each of the jobs that make the composite jobs, and that these jobs do exist in the DOT.[29] This testimony constitutes substantial evidence in support of the ALJ's Step Four finding.

Furthermore, the VE's testimony constitutes substantial evidence in support of the ALJ's alternative finding at Step Five of the capability to perform a significant number of jobs that exist in the national economy. Powell argues that this testimony cannot provide substantial evidence in support of a Step Five finding because the hypotheticals posed did not include greater limitations. But as discussed above, the RFC adopted by the ALJ does have the support of substantial evidence.

---

[26] *Id.* at 150-51.
[27] *Id.* at 18-19.
[28] *Id.* at 149.
[29] *Id.*

8

## Conclusion

The ALJ properly weighed and articulated with respect to the opinions of sources Brandon Blood, D.C. and Carla Rose, P.A. and the credibility of Powell's complaints of the severity and limiting effects of her pain. The RFC finding, therefore, has the support of substantial evidence in the administrative record. The VE's testimony provides substantial evidence in support of the finding that Powell can perform her past relevant work. Alternatively, the VE's testimony, in response to a hypothetical incorporating the limitations in the RFC eventually adopted by the ALJ, furnished substantial evidence in support of the finding that Powell can perform a significant number of jobs that exist in the national economy. I, therefore, affirm the decision of the Commissioner denying Powell's application for disability insurance benefits.

IT IS SO ORDERED.

Dated: April 26, 2019  s/ William H. Baughman, Jr.
United States Magistrate Judge